Ernie DE LA FUENTE, On Behalf of Himself And All Others Similarly Situated, Plaintiffs,

v.

DCI TELECOMMUNICATIONS, INC., Joseph J. Murphy, Russell B. Hintz, Larry Shatsoff, John Adams, Schnitzer & Kondub, P.C., Richard S. Kondub, and Ross J. Schnitzer, Defendants.

No. 01 CIV. 3365(CM).

United States District Court, S.D. New York.

May 5, 2003.

**AWARD OF SANCTIONS PURSUANT TO THE PRIVATE SECURITIES LITIGATION REFORM ACT**

MCMAHON, District Judge.

Pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15

§ U.S.C. 78u–4, a Court must make findings regarding compliance by each party and by each counsel with Rule 11(b) of the Federal Rules of Civil Procedure after final adjudication. After this action was dismissed, counsel for the prevailing defendants sought a ruling that two of the three firms representing plaintiff—Holzer & Holzer and Federman & Sherwood—had violated Rule 11 by commencing and maintaining this action. In an opinion dated February 10, 2003, I concluded that plaintiffs' counsel (without specifying which counsel) had indeed violated Rule 11 by pursuing this action.[1] *De La Fuente v. DCI Telecommunications, Inc.*, 259 F.Supp.2d 250 (S.D.N.Y.2003). I further found that the violation of Rule 11 was substantial. This triggered the mandatory PSLRA presumption that the appropriate sanction is an award to the opposing party of the reasonable attorneys' fees and costs incurred in the action. 15 § U.S.C. 78u–4(c)(3)(A)(ii); *De La Fuente*, at 274. I considered whether the violation, notwithstanding its substantiality, could be categorized as *de minimis*, in which case the mandatory presumption would be rebutted.[2] 15 § U.S.C. 78u–4(c)(3)(B)(ii). I concluded that it could not be so characterized. *De La Fuente*, at 274. I then asked each of the three firms representing plaintiff (two lead firms and a local liaison) to submit information concerning their participation in this action, and reminded them that (1) they bore the burden of rebutting the PSLRA presumption, and (2) the only remaining way to meet that burden was to demonstrate that the sanction would impose an unreasonable burden upon them and would be unjust. *Id* at 275, citing *Gurary v. Nu–Tech Bio.–Med. Inc.*, 303 F.3d 212, 225 (2d Cir.2002). I also requested precise fee and cost information from the firms representing defendants, so the amount of an appropriate sanction could be determined.

After reviewing the requested submissions, I make the following findings:[3]

## I. Attorneys' Fees and Costs Incurred by Defendants

The law firm of Greenberg Traurig LLP represented defendants DCI Telecommunications, Inc., Joseph J. Murphy, Russell Hintz, Jack Adams, and Lawrence Shatsoff (the "DCI Defendants"). According to their time records, 10 employees billed a total of 319 hours defending this action, at the cost of $97,968.25. An additional $7,352.27 of expenses was billed for research, deposition, mailing, travel, and other costs. My review of the billing records indicates that all fees and expenses were reasonable. I find that the DCI Defendants incurred costs of $105,320.52 in defending this action.

---

1. The opinion was amended on March 4, 2003 to reflect a correction in the title. No changes were made to the body of the opinion.

2. Pursuant to 15 § U.S.C. 78u–4(c)(3)(B), the presumption of full attorneys fees and costs may be rebutted only upon proof by the party or attorney against whom sanctions are to be imposed that -
   (i) the award of attorneys' fees and other expenses will impose an unreasonable burden on that party or attorney and would be unjust, and the failure to make such an award will not impose a greater burden on the party in whose favor sanctions are to be imposed; or
   (ii) the violation of Rule 11(b) of the Federal Rules of Civil Procedure was de minimis.

3. I note that the submissions were filed under seal, due to Mr. Holzer's concerns about disclosing the requested financial information to the public. I make findings in this case without specifically discussing any sensitive information contained in the submissions. Therefore, this decision will not be filed under seal.

The law firm of Vedder Price defended Schnitzer & Kondub P.C., Richard S. Kondub and Ross J. Schnitzer (the "S & K Defendants"). According to their time records, two attorneys billed a total of 291.5 hours defending this action, at a cost of $56,649.00. An additional $4,264.30 was billed for research, mailing, travel, and other costs. My review of the billing records indicates that all fees and expenses were reasonable. I find that the S & K Defendants incurred costs of $60,913.30 in defending this action.

## II. Plaintiffs' Counsel

### A. Wolf Haldenstein Adler Freeman & Herz LLP

■ Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein"), a law firm located in this district, acted as liaison counsel in this action. Defendants did not seek sanctions again Wolf Haldenstein when they requested PSLRA findings; their motion was directed to plaintiff's co-lead counsel, Holzer & Holzer and Federman & Sherwood. Wolf Haldenstein submitted information in response to my request, but contends that it should not be liable for any portion of the sanctions awarded because defendants did not seek to hold them liable. Indeed, Wolf Haldenstein moves for reconsideration of my February 10, 2003 decision to the extent that it holds them liable for PSLRA sanctions.

The predicate for Wolf Haldenstein's motion for reconsideration is erroneous. I did not hold any specific firm liable for sanctions in my February 10, 2003 decision. I made no distinction among the three law firms at that time, because I had no basis upon which to do so.

The fact that defendants did not specifically seek sanctions against Wolf Haldenstein no doubt reflects their view of that firm's participation in this case, but it cannot bind the court. As I specifically noted in my February 10, 2003 decision, the PSLRA requires that, upon final adjudication of an action arising under its purview, "the court shall include in the record specific findings regarding compliance by *each* party and *each attorney representing any party* with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure ..." 15 § U.S.C. 78u–4(c)(1)(emphasis added); *De La Fuente*, at 255. Wolf Haldenstein argues that, "that review is generally undertaken only pursuant to a formal motion by the defendants to do so." But the realities of busy district court practice do not change the requirements of the PSLRA. Upon finding that plaintiff's counsel had violated Rule 11(b), I sought information from each firm representing plaintiff as to the extent of their involvement, as the statute plainly requires.

Wolf Haldenstein also argues that it would not be appropriate to award sanctions as against it, because its role in the case was essentially administrative. It argues that it essentially performed "local counsel" type tasks, such as advising co-lead counsel on local rules and practices and performing ministerial functions in preparing documents for filing. Wolf Haldenstein admits that it reviewed and discussed legal arguments with co-lead counsel, but maintains that it did not duplicate the legal research performed by co-lead counsel, instead relying on their research "for the correctness of the propositions of law stated and for the accuracy of the case citations contained therein." Wolf Haldenstein contends that its main duties consisted of consulting about the form of papers and reading and editing (but not substantively revising) papers that it was to file on behalf of co-lead counsel.

This court has demonstrated a strong preference for local liaison counsel when securities fraud class actions are filed by

out-of-state lawyers. It facilitates communication and ensures that out-of-state lawyers are familiarized with local rules and practices. It also ensures that if a court appearance is necessary on short notice or for a minor matter, a legal representative of the litigant can be available quickly, and without the expense of out-of-state travel. It is not uncommon for local liaison counsel to play a purely administrative role. Indeed, in my court, I commonly remind counsel that I do not want multiple law firms duplicating the work of lead counsel and inflating class counsel fees. The local firms who appear before me as liaison counsel know that I mean for them to limit themselves to administrative matters, in keeping with the role of Liaison Counsel as defined in the Manual for Complex Litigation § 20.221: "Liaison Counsel: charged with essentially administrative matters, such as communications between the court and other counsel (including receiving and distributing notices, orders, motions, and briefs on behalf of the group), convening meetings of counsel, advising parties of the developments in the case, and otherwise assisting in the coordination of activities and positions. Such counsel may act for the group in managing document depositories and in resolving scheduling conflicts. Liaison counsel will usually have offices in the same locality as the court. (footnote omitted)."

Wolf Haldenstein did not limit its participation to the degree that I expect from liaison counsel. Its time records include time expenditures that I consider unnecessary. And its total number of recorded hours—142—initially suggests that it took on tasks and responsibilities outside the limited role of liaison counsel. However, upon closer examination of its time records, particularly in comparison to the time records of Federman & Sherwood and Holzer & Holzer, I find that Wolf

Haldenstein's participation in the case was essentially non-substantive.

Of the 142 hours recorded by Wolf Haldenstein, 43.9 hours were billed by five or six members of its non-legal staff. The tasks performed by the support personnel include: copying; traveling to court and filing motions; filing; drafting summonses; creating subpoenas; creating tables of authorities for, and editing of, motions and memorandum; and other document preparation work.

That still leaves almost one hundred hours of legal work. Over a third of this time (35.7 hours) was recorded on the business day preceding the filing of either the Amended Complaint, the Opposition to the Motion to Dismiss and supporting memorandum, or the Opposition to the Motion for Partial Summary Judgment and supporting memorandum. This time is described as "editing" or "finalizing" of the amended complaint or memoranda, as well as a small amount of time for cite checking of the memoranda (which, because it was 3.3 hours and 1.2 hours on the days before filing each memorandum, suggests cite checking for form and reversal, and not for substance). I note that one attorney alone, Gregory M. Nespole, billed 10 hours, 14 hours, and 7 hours to editing the complaint and two opposition memoranda, respectively, on the business day before these filings. I do think that these hours appear on their face to be a bit inflated for "editing," but that is another issue, one which I need not concern myself with today. What is important here is that there is no evidence that any Wolf Haldenstein attorney did substantive work on these filings. Wolf Haldenstein's time records show no significant time spent by its lawyers on either the complaint or the opposition motions and memoranda prior to the eve of filing; and no attorney recorded time to "research," "investigation," or "drafting" of

these papers. In contrast, as discussed below, co-lead counsel's time records show that, well before the filing dates, they performed research, investigation, and drafting work on the amended complaint and both memoranda. Thus, the time records of all parties suggest that Wolf Haldenstein's time was spent rushing to prepare the amended complaint and the opposition motions and memoranda for last-minute filing, not in crafting legal arguments. Congress did not pass the PSLRA's counsel fee provisions to punish lawyers for inflating their time.

Mr. Nespole recorded an additional 15 hours over the course of over two weeks on "editing," "amending" and "finalizing" the class certification motion. I note that this motion, unlike those discussed above, was not the basis of the Rule 11(b) violation. And again, the time records of the co-lead counsel show that they recorded time for "drafting" the motion and "researching" the legal issues. It appears that Mr. Nespole discussed this motion with co-lead counsel, but there is no evidence that he took on the substantive legal work. The case record before me actually contains a copy of Wolf Haldenstein's mark-ups of the class certification motion, which was submitted by Holzer & Holzer as evidence of its involvement in the case. But the edits consist solely of typo corrections, form and style adjustments, and insertion of clarifying language. The only comment on a legal citation is a note commenting that one citation does not appear to match an earlier citation to the same case, which the Wolf Haldenstein attorney (presumably Mr. Nespole) notes and then inquires: "Is this right?" These mark-ups thus support Wolf Haldenstein's contention that it helped polish and prepare the filings, but relied on co-lead counsel for legal research and investigation. So the one example in the record of Wolf Halden-

stein's editing work supports its contention that its work was non-substantive.

In addition to the preparation of the amended complaint and memorandum, Wolf Haldenstein billed one other significant block of time—13.5 hours by Brian S. Cohen in connection with the deposition of Ernie de la Fuente, which was conducted for class discovery purposes. Mr. Cohen's time breaks down as follows: 10 hours on the day of the deposition, preparing for and attending the deposition; 3 hours the night before, preparing and reviewing documents; and two brief discussions regarding the deposition in the preceding week. Mr. de la Fuente's deposition was also attended by an attorney from co-lead counsel Federman & Sherwood, William Plouffe. Mr. Plouffe billed 33.25 hours for the deposition, which includes the deposition itself, travel time (which unfortunately is not broken out separately on the billing records), and preparation work throughout the week preceding the deposition. Another Federman & Sherwood attorney billed 10.8 hours to deposition preparation in the preceding week. It is clear from both these time records and from the deposition transcript itself, which I have reviewed, that Mr. Plouffe was primarily responsible for defending plaintiff at the deposition. Mr. Cohen's comments during the deposition were limited to asking clarifying questions about documents and question format, and providing occasional general advice to the plaintiff, such as "Don't guess." Mr. Cohen's presence at the deposition appears to have been unnecessary, and is the prime example of the type of wasteful time expenditure that I do not expect from liaison counsel. But the work was not substantive.

The only "original" work done by a Wolf Haldenstein attorney is the 5.5 hours recorded by Mr. Nespole on June 22, 2001 for drafting the lead plaintiff application.

I have reviewed this application, and conclude that it is essentially a pro forma application, summarizing the facts from the complaint and inserting standard class certification case citations. I do not find it inappropriate for liaison counsel to participate by preparing such an application, and would not expect a local lawyer preparing it to reexamine and independently verify the underlying facts. The remaining attorney time—less than 34 hours spent over the course of approximately nine months—consisted of administrative tasks, a brief court appearance on the lead counsel application, and relatively brief discussions with co-lead counsel.

Thus, the record supports Wold Haldenstein's contention that it limited its participation in the case primarily to administrative tasks. In contrast, as discussed below, the co-lead counsel performed almost exclusively substantive work. The fact that Wolf Haldenstein undertook the task of reviewing papers prepared by co-lead counsel for form and editing them prior to submission does not mean that they undertook a substantive role. Not only does this Court not expect that local liaison counsel will independently confirm the assertions made in pleadings or research the arguments made in briefs, but I would be unlikely to award attorneys' fees for such duplication. When out-of-town lawyers file lawsuits here, they are responsible for the merits of their own cases.

Holzer & Holzer, one of the co-lead counsel firms, disputes Wolf Haldenstein's assertion that it played a limited role here, arguing that, "notwithstanding [Wolf Haldenstein's] titular distinction as liaison counsel," the co-lead counsel, "treat[ed] Wolf Haldenstein as a *de facto* co-lead counsel." To support this claim, Holzer & Holzer submitted a letter, in which it asked Wolf Haldenstein to assist in certain aspects of the case preparation. However, there is no evidence that Wolf Haldenstein actually undertook any substantive tasks, and Holzer's assertion is inconsistent with the content of Wolf Haldenstein's time records.

No sanctions are awarded against Wolf Haldenstein: the firm has successfully rebutted the PSLRA presumption by showing that it would be unjust to sanction it for Rule 11 violations. The motion for reconsideration is denied as moot.

### B. Holzer & Holzer

■ The firm of Holzer & Holzer, co-lead counsel, was heavily involved in bringing and pursing this action. It recorded a total of 288.5 hours, all of which consisted of legal work done by the two attorneys working on the case. The time descriptions indicate that they: performed both factual "investigation" and legal research; discussed strategy and research results with each other and with co-lead counsel; drafted the amended complaint, the class certification memorandum, and the opposition memoranda for the Motion to Dismiss and the Motion for Summary Judgment; and handled discovery issues. While Holzer & Holzer's time records indicate that Mr. Nespole was included in some of the conversations with co-lead counsel, the records show that these were either brief conversations (regarding the status of the case, rulings of the court class certification, service issues, etc.) or conversations on the eve of filing the Amended Complaint or the motions in opposition to dismissal and summary Judgment. It is impossible to tell how long these conversations on the eve of filing lasted, as neither the attorneys at Holzer & Holzer nor Mr. Nespole billed their time on an activity-by-activity basis. But nothing in the record suggests that Mr. Nespole was a party to substantive discussions. Rather, the time records

indicate that the substantive work of researching and drafting the complaint and legal memoranda was undertaken by the Holzer & Holzer attorneys working together and with their co-lead counsel at Federman & Sherwood.

In response to my order, Corey Holzer, Esq. provided particularized financial information regarding the firm and his personal debts. He describes his firm and personal financial positions as "precarious," and claims that the imposition of sanctions would be burdensome and unjust because it could jeopardize the firm's continued existence. Holzer & Holzer also argues that the failure to make such an award cannot be said to impose a greater burden on "large, established, well-capitalized law firms such as Greenberg Traurig and Vedder Price."

Wolf Haldenstein submitted information to the court showing that Holzer & Holzer is actively pursuing clients. The documents are not, however, inconsistent with its claim that it is not currently well capitalized.

■ The DCI defendants respond to Holzer & Holzer's arguments by correctly noting that the PSLRA allows the Court to consider the burden on *defendants,* not on defendants' counsel. Mr. Holzer has submitted no information about the burden that the cost of defending against this lawsuit imposes on defendants. The DCI defendants, however, represent that the company is bankrupt, with no ongoing operations, and that the individual DCI defendants are uninsured and personally liable for the costs of litigation. While the Court has no information regarding similar difficult circumstances faced by the S & K Defendants (which did not respond to plaintiff's counsels' submissions), it also has no information to suggest that the burden of their litigation expenses is less than the burden that will be imposed on

plaintiff's counsel by complying with the PSLRA. The burden of demonstrating that the presumption does not apply rests with plaintiff's lawyers; the PSLRA does not require the prevailing defendants to demonstrate that the burden to them is greater than the burden to the offending parties.

After reviewing the time records, I conclude that, as co-lead counsel in this action, Holzer & Holzer was 50% responsible for the violation of Rule 11(b). However, I am persuaded by the information submitted that it would impose an unreasonable burden on Holzer & Holzer to award sanctions against them in the amount of $83,116.91. Because Holzer & Holzer has rebutted the mandatory presumption of full attorney's fees and costs, I am permitted by the PSLRA to award the sanctions that I deem appropriate pursuant to Rule 11. 15 § U.S.C. 78u–4(c)(3)(C). Accordingly, I award sanctions against Holzer & Holzer in the amount of $40,000, of which $25,344.00 is to be paid to DCI Defendants and $14,656.00 is to be paid to S & K Defendants.

### C. Federman & Sherwood

■ The firm of Federman & Sherwood, co-lead counsel, was also heavily involved in bringing and pursing this action. It recorded a total of 216.65 hours, 212.6 hours of which was billed by lawyers. Two lawyers did the majority of the work on the case. A third lawyer billed 8.5 hours, and a paralegal billed 4.05 hours. The time records indicate that the attorneys: conducted background investigation into the merits of the case; reviewed defendants' motion to dismiss and formulated and researched arguments; reviewed documents and authority provided by co-counsel; researched various legal issues for the motion to dismiss, the class certification brief, and security fraud actions in general;

discussed strategy with co-counsel; prepared for the plaintiff's deposition; and worked on discovery matters.

In response to my order asking for information about whether the imposition of sanctions would be unduly burdensome or unjust, Federman argues that the imposition of sanctions would be unjust because sanctions should not have been imposed in the first place. Federman does no more than reargue the issue already decided by the Court. The firm also suggests that sanctions should be reduced because it has lost all the time spent and expenses advanced to pursue this case. This argument ignores the legislative purpose of the PSLRA: it is not persuasive.

Federman & Sherwood asserts generally that it is a small firm and that the assessment of costs and legal fees "will impact Federman & Sherwoods's ability to potentially represent investors in other proceedings." But Federman, unlike Holzer, fails to proffer hard data about its finances. Conclusory statements do not suffice to rebut the mandatory PSLRA presumption.

Federman & Sherwood leaves me with little choice. I warned them that, "given the draconian nature of the PSLRA's mandatory sanction," I was allowing them an opportunity to explain "why the award of attorneys' fees and expenses would impose an unreasonable burden and would be unjust." *De La Fuente,* at 275. They have not done so. As a result, the mandatory presumption of the PSLRA applies.

As co-lead counsel in this action, Federman & Sherwood was 50% responsible for the violations of Rule 11(b). I thus award of sanctions in the amount of $83,116.91 against Federman & Sherwood— $52,662.87 of which is to be paid to the DCI Defendants and $30,454.04 of which is to be paid to the S & K Defendants.

## CONCLUSION

All monetary sanctions must be paid by to plaintiffs in the form of a money order or certified check, made payable to the respective law firms. Payment is due ten (10) days after entry of this order.

The clerk of the court is directed to close the file.

This constitutes the decision and order of this court.