Scott **TANNE**, individually and on behalf of all others similarly situated, Plaintiff,

v.

**AUTOBYTEL, INC., Michael Fuchs, Jeffrey Schwartz, and Hoshi Printer, Defendant.**

Nos. CV04–8987 MMM (JWJx), CV04–09551 MMM (PJWx).

United States District Court, C.D. California.

March 15, 2005.

---

Christopher Kim, Lisa J. Yang, Lorinda D. Franco, Lim Ruger and Kim, Lionel Z. Glan-

cy, Michael M. Goldberg, Glancy Binkow and Goldberg, Los Angeles, CA, Marc A. Topaz, Richard A. Maniskas, Tamara Skvirsky, Schiffrin and Barroway, Bala Cynwyd, PA, for Plaintiff.

## ORDER APPOINTING LEAD PLAINTIFF AND APPROVING LEAD COUNSEL

MORROW, District Judge.

This is a securities fraud action brought pursuant to the Securities Exchange Act of 1934 and the Private Securities Litigation Reform Act of 1995 ("PSLRA" or the "Reform Act"). On January 28, 2005, the court entered an order consolidating five related actions pursuant to the parties' stipulation.[1] Four plaintiffs have now moved for appointment as Lead Plaintiff, and for approval of their counsel as lead counsel.

### I. FACTUAL BACKGROUND [2]

The plaintiff class encompasses investors who purchased or acquired the securities of Autobytel, Inc. between July 24, 2003 and October 21, 2004 (the "Class Period").[3] Autobytel, Inc. is a Delaware corporation with its principal place of business in Irvine, California. Autobytel is an automotive marketing services company that offers management tools that provide marketing, advertising, and customer relationship assistance to dealers and manufacturers, primarily through the Internet.[4] Autobytel maintains three car-buying websites—Autobytel.com, Autoweb.com and CarSmart.com.[5] It also maintains an automotive research website whose address is Auto-Site.com.[6] Autobytel owns AV, Inc., a provider of dealership lead management tools and dealer management system data ex-

---

1. The cases consolidated were *Tanne v. Autobytel, Inc., et al.,* Case No. CV 04–8987 MMM (JWJx), *Malasky v. Autobytel, Inc.,* Case No. CV 04–10365 MMM (JWJx), *Sorrell v. Autobytel, Inc.,* Case No. CV 04–10360 MMM (JWJx), *Brea v. Autobytel, Inc.,* Case No. CV 04–9951 MMM (JWJx), and *Micro Investors, LLC v. Autobytel, Inc.,* Case No. CV 04–1412 JVS (MLGx).

2. This summary is based on the allegations of the first-filed complaint, which are virtually identical

to allegations found in the remaining consolidated complaints.

3. Complaint, ¶ 1.

4. *Id.,* ¶ 24.

5. *Id.*

6. *Id.*

traction services.[7] In April 2004, Autobytel acquired Stoneage Corporation, an internet automotive buying service and the owner of the Car.com website and iDriveonline, Inc. iDriveonline.com provides customer loyalty and retention marketing programs for the automotive industry.[8]

Plaintiffs allege that, throughout the Class Period, defendants failed to disclose that Autobytel had improperly recognized certain unapplied credits as revenue, that it had materially overstated results by $900,000, that its financial results violated generally accepted accounting principles, and that it lacked adequate internal controls.[9]

On October 21, 2004, Autobytel announced partial 2004 third quarter financial results, and postponed the earnings conference call and webcast scheduled for that afternoon.[10] The company's announcement was accompanied by an explanation that the Board Audit Committee was directing an internal review of the accounting treatment of certain unapplied credits recognized as revenue during the four quarters ending March 31, 2004.[11] Plaintiffs contend that, following this announcement, Autobytel's stock fell more than 21 % to close at $6.80 per share.[12]

Scott Tanne filed a class action complaint against Autobytel and certain of its officers and directors on October 29, 2004. Four other plaintiffs followed suit. The cases were consolidated on January 28, 2005, pursuant to the parties' stipulation. Four plaintiffs now seek appointment as lead plaintiff and approval of their respective attorneys as lead counsel.

## II. DISCUSSION

### A. Legal Standard Governing Appointment of Lead Plaintiff

The Reform Act provides that within twenty days after the date on which a securities class action complaint is filed,

"the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class—

(i) of the pendency of the action, the claims asserted therein, and the purported class period; and

(ii) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." See 15 U.S.C. § 78u–4(a)(3)(A)(i).

If more than one action is filed, only the plaintiff or plaintiffs in the first-filed action are required to publish notice. See 15 U.S.C. § 78u(4)(a)(3)(A)(ii). The Reform Act requires that within ninety days of the published notice,

"the court ... shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter ... referred to as the 'most adequate plaintiff')...." 15 U.S.C. § 78u–4(a)(3)(B)(i).

In selecting a lead plaintiff,

"the court shall adopt a presumption that the most adequate plaintiff in any private action ... is the person or group of persons that—(aa) has either filed the complaint or made a motion [for designation as lead plaintiff]; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I).

This presumption may be rebutted

"only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique

7. *Id.*

8. *Id.*

9. *Id.,* ¶ 35.

10. *Id.,* ¶ 36.

11. *Id.*

12. *Id.,* ¶ 37.

defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u–4(a)(3)(B)((iii))(II).

■ Interpreting these statutes, the Ninth Circuit has held that the Reform Act "provides a simple three-step process for identifying the lead plaintiff" in a securities fraud case. *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir.2002). "The first step consists of publicizing the pendency of the action, the claims made and the purported class period." *Id.* At the second step, "the district court must consider the losses allegedly suffered by the various plaintiffs," and select as the "presumptively most adequate plaintiff ... the one who has the largest financial interest in the relief sought by the class and [who] otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id.* at 729–30 (internal citations omitted). As a third and final step, the court must "give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Id.* at 730.

The *Cavanaugh* court cautioned that "a straightforward application of the statutory scheme ... provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case.... So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job." *Id.* at 732. With these principles in mind, the court turns to the competing motions for appointment as lead plaintiff that have been filed.

### B. Publication

On October 29, 2004, Scott Tanne, the plaintiff who filed the first action against Autobytel, published notice of the pendency of his suit over *PR Newswire,* a national business-oriented wire service.[13] The notice advised class members of the filing of the *Tanne* action and of the class period alleged.[14] It stated that if class members wished to serve as lead plaintiff they were required to move for appointment no later than December 28, 2004, sixty days after the date on which the notice was published.[15] See 15 U.S.C. § 78u–4(a)(3)(A)(i)(II) (stating that within "60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff").

### C. Motions For Appointment As Lead Plaintiff

Five motions were filed requesting designation as lead plaintiff and approval of lead counsel. One was subsequently withdrawn,[16] and four remain pending. Gary Kurtz seeks appointment as lead plaintiff, approval of Schiffrin & Barroway, LLP as lead counsel, and approval of Lim Ruger & Kim, LLP as liaison counsel.[17] NJS Advisors, Inc. has moved for appointment as lead plaintiff and for the appointment of its attorneys, Lerach Coughlin Stoia Gellar Rudman & Robbins, LLP, as lead counsel.[18] Alex Mintz requests appointment as lead plaintiff, approval of Pomerantz Haudek Block Grossman & Gross, LLP as lead counsel, and approval of Glancy Binkow & Goldberg, LLP as local counsel.[19] Cesar Brea, Laurence Vernon, Stephen Wascak, Igor Lachter and William Fortier (the "Brea Plaintiffs Group") move for appointment as lead plaintiffs and approval of Glancy Binkow & Goldberg, LLP and Murray Frank & Sailer as co-lead coun-

---

**13.** Decl. of Lisa J. Yang in Support of Motion to Appoint Gary Kurtz as Lead Plaintiff ("Yang Decl."), Ex. B.

**14.** *Id.* at 1.

**15.** *Id.*

**16.** See Notice Of Withdrawal Of Motion Of Michael Brinda For Appointment As Lead Plaintiff And Approval Of His Selection Of Lead Counsel at 1.

**17.** Motion To Appoint Gary Kurtz As Lead Plaintiff And For Appointment Of Lead Counsel ("Kurtz Mot.").

**18.** Motion To Appoint NJS Advisors, Inc. As Lead Plaintiff And To Approve Lead Plaintiff's Choice Of Lead Counsel ("NJS Mot.").

**19.** Alex Mintz's Motion For Appointment Of Lead Plaintiff And Approval Of Lead Counsel For The Autobytel Shareholder Class ("Mintz Mot.").

sel.[20]

### 1. Financial Stake

■ A review of the declarations and briefs submitted by the moving parties shows that Gary Kurtz is the presumptive lead plaintiff because he has suffered a loss of $391,590.93, and has the largest financial stake in the litigation.[21] Alex Mintz, who received Autobytel stock when it acquired iDriveonline on April 9, 2004, claims a $254,205.53 loss.[22] NJS claims a $116,555.85 loss resulting from its purchase of 17,200 shares of Autobytel stock on February 10, 2004.[23] The Brea Plaintiffs Group, comprised of five individual plaintiffs, claims aggregated losses of $22,099.68.[24]

■ As noted, the Reform Act "provides in categorical terms that the *only* basis on which a court may compare plaintiffs competing to serve as lead is the size of their financial stake in the controversy." See *Cavanaugh, supra,* 306 F.3d at 732. Because Kurtz has the largest financial interest in the relief sought by the class, he is therefore the presumptive lead plaintiff. See 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). Accordingly, the court must consider whether Kurtz satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure, and in particular, the requirements of "typicality" and "adequacy." See *Cavanaugh, supra,* 306 F.3d at 730 (stating that the "district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit. It must then focus its attention on *that* plaintiff and determine, based on the information he has provided in his pleadings and declarations whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy' " (emphasis original)).

### 2. Typicality And Adequacy Under Rule 23

■ "A wide ranging analysis is not appropriate" to determine whether Kurtz has made a prima facie showing that he satisfies the requirements of Rule 23, and "should be left for consideration on a motion for class certification." *Fischler v. AmSouth Bancorp.,* No. 96–1567–Civ–7–17A, 1997 WL 118429, * 2 (M.D.Fla. Feb.6, 1997); see also *In re Cendant Corp. Litigation,* 264 F.3d 201, 263 (3d Cir.2001) (stating that "[t]he initial inquiry (i.e., the determination of whether the movant with the largest interest in the case 'otherwise satisfies' Rule 23) should be confined to determining whether the movant has made a prima facie showing of typicality and adequacy"), cert. denied, 535 U.S. 929, 122 S.Ct. 1300, 152 L.Ed.2d 212 (2002); *Gluck v. CellStar Corp.,* 976 F.Supp. 542, 546 (N.D.Tex.1997) ("Evidence regarding the requirements of Rule 23 will, of course, be heard in full at the class certification hearing. There is no need to require anything more than a preliminary showing at this stage"); *Wenderhold v. Cylink Corp.,* 188 F.R.D. 577, 587 (N.D.Cal.1999) (stating that, at this stage of the litigation, nothing more than a preliminary showing is required). Moreover, as the Third Circuit noted in *Cendant,* "institutional investors and others with large losses will, more often than not, satisfy the typicality and adequacy requirements." *Cendant, supra,* 264 F.3d at 264.

#### a. Typicality

■ "The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the

---

**20.** *Mot. Of The Brea Pls. Group For Consolidation Of Related Actions, For Appointment As Lead Plaintiff And For Approval Of Lead Plaintiff's Selection Of Co–Lead Counsel* ("Brea Mot.").

**21.** Yang Decl., Ex. C.

**22.** Declaration Of Dale MacDiarmid In Support Of The Motion To Appoint Alex Mintz As Lead Plaintiff And For Appointment Of Lead Counsel ("MacDiarmid / Mintz Decl."), Exh. C.

**23.** Declaration Of Jason R. Llorens In Support Of Motion To Appoint NJS Advisors As Lead Plaintiff And To Approve Lead Plaintiff's Choice of Lead Counsel ("Llorens Decl."), Ex. B.

**24.** Declaration Of Dale MacDiarmid In Support Of The Motion Of The Brea Plaintiffs Group For Consolidation Of Related Actions, For Appointment As Lead Plaintiff And For Approval Of Lead Plaintiff's Selection Of Co–Lead Counsel ("MacDiarmid / Brea Decl."), Exh. C.

[Lead Plaintiffs] have incentives that align with those of absent class members so ... that the absentees' interests will be fairly represented." *Takeda v. Turbodyne Technologies, Inc.,* 67 F.Supp.2d 1129, 1136 (C.D.Cal.1999) (citation omitted). "Under [Rule 23's] permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir.1998). "Typicality [thus] entails an inquiry whether the named plaintiff's individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Takeda, supra,* 67 F.Supp.2d at 1136–37 (citations omitted).

█ Here, Kurtz's claims are typical because, just like other class members, he: (1) purchased or acquired Autobytel securities during the Class period, (2) at prices alleged to be artificially inflated by defendants' materially false and misleading statements and/or omissions, and (3) suffered damage as a result.[25] As a consequence, his claims are substantially similar, if not identical, to those of other class members who invested in Autobytel stock during the Class Period and sustained losses resulting from the alleged misrepresentations. Because a "preliminary showing" is all that is necessary, and because Kurtz has submitted a sworn certification indicating that he purchased securities and suffered losses during the class period,[26] the court concludes that Kurtz has met his burden of establishing typicality. See *Cendant, supra,* 264 F.3d at 265 ("in inquiring whether the movant has preliminarily satisfied the typicality requirement, [the court] should consider whether the circumstances of the movant with the largest losses are markedly different or the legal theory upon which the claims of that movant are based differ[s] from that upon which the claims of other class members will perforce be based" (citations and internal quotation marks omitted));

*Erikson v. Cornerstone Propane Partners LP,* No. C 03–2522 MHP, C 03–3566 MHP, 2003 WL 22232387, *3 (N.D.Cal. Sept.15, 2003) (noting that "[a]t this stage of litigation, all that is required is a 'preliminary showing' that the lead plaintiff group will satisfy the 'typicality' and 'adequacy' requirements .... Lamphere purchased significant numbers of shares of CornerStone stock during the class period and incurred substantial losses allegedly attributable to CornerStone's actions during that period.... Lamphere thus satisfies the 'typicality' requirement").

**b. Adequacy Of Class Representative**

█ Rule 23(a) requires that the person representing a class be able fairly and adequately to protect the interests of all class members. FED.R.CIV.PROC. 23(a)(4). Whether the class representative will adequately represent the class depends on the circumstances of each case. *McGowan v. Faulkner Concrete Pipe Co.,* 659 F.2d 554, 559 (5th Cir.1981). In evaluating whether a class representative is adequate, courts assess whether he has interests antagonistic to the class, and whether his counsel have the necessary capabilities and qualifications. *In re Emulex Corp.,* 210 F.R.D. 717, 720 (C.D.Cal.2002). The Ninth Circuit has held that representation is "adequate" when counsel for the class is qualified and competent, the representative's interests are not antagonistic to the interests of absent class members, and it is unlikely that the action is collusive. *In re Northern District of California, Dalkon Shield IUD Products Liability Litigation,* 693 F.2d 847, 855 (9th Cir.1982). In addition, the class representative must have a sufficient interest in the outcome of the case to ensure vigorous advocacy. See *Riordan v. Smith Barney,* 113 F.R.D. 60, 64 (N.D.Ill.1986). "Adequacy, for purposes of the lead plaintiff determination, is contingent upon both the existence of common interests between the proposed lead plaintiffs and the class, and a willingness on the part of the

---

**25.** See Memorandum In Further Support Of Gary Kurtz's Motion For Appointment As Lead Pl. And For Approval Of His Selection Of Lead Counsel And Liaison Counsel, And In Opposition To All Competing Motions Seeking Appointment Of Lead Pl. at 5 ("Kurtz Opp.").

**26.** Yang Decl., Exs. A, C.

proposed lead plaintiff to vigorously prosecute the action." *In re Milestone Scientific Securities Litigation*, 183 F.R.D. 404, 416 (D.N.J.1998).

■ Kurtz is an "adequate" plaintiff because he has suffered the greatest financial loss, ensuring vigorous advocacy, and represented that he is "committed to prosecution of this action."[27] Kurtz submitted both a certification detailing his purchases of Autobytel securities during the class period,[28] and a declaration stating that he is willing to accept the responsibilities of serving as a representative party on behalf of the class.[29] He holds a degree in physics and has worked on major projects, including the Space Shuttle, for twenty-nine years as a materials engineer; he is thus comfortable overseeing large projects and meeting deadlines.[30] Although he lives in Michigan, Kurtz communicates with his attorneys via telephone or e-mail on an almost a weekly basis and is prepared to travel to Los Angeles for court proceedings when necessary.[31]

Further, Kurtz's interests are not antagonistic to those of other class members. Rather they are aligned because each member of the class purchased or acquired Autobytel stock in reliance on the company's alleged misrepresentations or omissions. Finally, there is no evidence (and no movant has argued) that Kurtz's action is collusive, and he has retained qualified and competent counsel.

Proposed Lead Counsel, Schiffrin & Barroway, LLP, has specialized in complex class action litigation for more than sixteen years, representing stockholders and consumers in state and federal cases throughout the United States.[32] The firm focuses primarily on the prosecution of securities fraud litigation, derivative actions, and transactional litigation against public companies, executives, audi-

tors and investment banking firms, and has recovered in excess of one billion dollars for stockholder and consumer plaintiffs over time.[33] Kurtz also proposes that Lim, Ruger & Kim, LLP be appointed local liaison counsel. Lim, Ruger & Kim is a Los Angeles, California firm specializing in complex civil and commercial litigation, including cases that involve securities, corporate, banking, and domestic and international business transactions.[34] Upon reviewing the firms' resumes, the court finds that both are qualified and competent to serve as class counsel.

In sum, Kurtz has made a prima facie showing that he satisfies both the typicality and adequacy requirements of Rule 23, the court concludes that he is the presumptively most adequate plaintiff. See *Cavanaugh, supra*, 306 F.3d at 730.

### 3. Rebuttal Of Proposed Lead Plaintiff's Showing

■ The third step in determining the lead plaintiff is to afford other plaintiffs the opportunity to present evidence disputing the lead plaintiff's prima facie showing of typicality and adequacy. *Id.* at 730. Pursuant to the Reform Act, the statutory presumption in favor of the most adequate plaintiff can be rebutted in two ways:

"The presumption .... may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff

(aa) will not fairly and adequately protect the interests of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

See also *In re Advanced Tissue Sciences Securities Litigation*, 184 F.R.D. 346, 350–51

---

27. Kurtz Mot. at 7, n. 5.

28. Yang Decl., Ex. A.

29. Declaration Of Lisa J. Yang In Support Of Reply Memorandum Of Law ("Yang Reply Decl."), Ex. A.

30. Declaration of Gary Kurtz in Further Support of Motion to Be Appointed Lead Plaintiff and For

Approval of Lead Plaintiff's Selection of Lead Counsel ("Kurtz Decl."), ¶ 6.

31. *Id.*, ¶ 7.

32. Yang Decl., Ex. D at 1.

33. *Id.*

34. *Id.*, Ex. E.

(S.D.Cal.1998). As noted in *Cendant*, "once the presumption is triggered, the question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a fair and adequate job." *Cendant, supra,* 264 F.3d at 268. The inquiry "is not a relative one." *Id.*

### a. Mintz

■ Mintz and NJS oppose Kurtz's appointment as lead plaintiff.[35] Mintz[36] contends that he should be appointed lead plaintiff because he is the only plaintiff who has asserted claims under Section 11 of the Securities Act of 1933 ("Securities Act") in addition to Section, 10(b) of the Securities and Exchange Act of 1934 ("Exchange Act").[37] "Unlike section 10(b), section 11 of the 1933 Securities Act creates a private remedy for any purchaser of a security if 'any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading.'" *In re Daou Systems, Inc. Securities Litigation,* 397 F.3d 704 (9th Cir. 2005) (quoting 15 U.S.C. § 77k(a)). Mintz appears to contend that none of the moving plaintiffs, save him, purchased Autobytel securities in reliance on a misleading registration statement.

None of the complaints filed in the consolidated actions includes a claim under section 11 of the Securities Act. Even if the court were to assume that the consolidated class action complaint would add such a claim to those under sections 10(b) and 20(a) of the Exchange Act, "[n]othing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action. Rather, because the PSLRA mandates that courts must choose a party who has, among other things, the largest financial stake in the outcome of the case, it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim." *Hevesi v. Citigroup, Inc.,* 366 F.3d 70, 82 (2d Cir.2004); *In re National Golf Properties Securities Litigation,* No. CV 02–1383–GHK (RZx), 2003 WL 23018761, *1 (C.D.Cal. Mar. 19, 2003) (denying defendants' motion to dismiss a section 11 claim because the lead plaintiff lacked standing to assert the claim, and stating that "the [PSLRA] does not require Lead Plaintiffs to have standing to assert all claims, only that they have the greatest financial stake in the action").

■ Irrespective of the lead plaintiff's standing to pursue a section 11 claim, the class may pursue any claim that at least one named plaintiff has standing to pursue. See *In re National Golf Properties, supra,* 2003 WL 23018761 at *1.[38] Although Mintz con-

---

**35.** The Brea Group filed a motion for appointment as lead plaintiff, but did not file opposition to the motions filed by other plaintiffs.

**36.** Mintz's opposition was filed two days after the deadline set by the court. Accompanying the brief was the declaration of attorney Dale J. MacDiarmid, who explained that the firm missed the filing deadline due to a clerical error. Noting that no party was prejudiced by the late filing, counsel asserted that there was good cause for the court to accept the late filing. No party has objected to Mintz's late opposition, and it does not appear that any party has been prejudiced by the two-day delay. Accordingly, the court has considered the arguments raised in Mintz's opposition, but directs him to comply strictly with all future deadlines.

**37.** Memorandum Of Points And Authorities In Opposition To The Competing Motions For Lead Plaintiff And In Further Support Of Alex Mintz's

Motion For Appointment Of Lead Plaintiff And Approval Of Lead Counsel For The Autobytel Shareholder Class ("Mintz Opp.") at 2.

**38.** The court presently has no information as to whether any named plaintiff has standing to assert a claim under section 11 of the Securities Act. Even if none of the presently named plaintiffs has standing to pursue such a claim, however, plaintiffs may seek to add new named plaintiffs in order to assert the claim. See *In re Initial Public Offering Securities Litigation,* 214 F.R.D. 117, 122–23 (S.D.N.Y.2002) (granting leave to add new named plaintiffs after the lead plaintiff's standing to bring certain claims was challenged, and concluding that "in order of a claim to be asserted on behalf of a putative class, only the named plaintiffs—but not necessarily the lead plaintiff—must have standing"); *Carson v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* No. Civ. 97–5147, 1998 WL 34076402, *12 (W.D.Ark. Mar.30, 1998) (granting leave to file an amended

tends that he is the only potential lead plaintiff who would have standing to assert both section 11 and section 10(b) claims, he proffers no evidence that Kurtz cannot fairly and adequately represent his circumstances or the legal theories underlying his claims. Nor does he argue that Kurtz is subject to unique defenses that make him incapable of serving as an adequate representative for the class. Accordingly, the court concludes that Mintz has failed to rebut the presumption that Kurtz should be appointed lead plaintiff.

■ Mintz argues alternatively that the court should appoint co-lead plaintiffs—one to represent the section 11 claimants and one to represent the section 10(b) claimants.[39] See *In re Peregrine Systems, Inc. Securities Litigation*, No. 02 CV 870-J (RBB), 2002 WL 32769239, *12 (S.D.Cal. Oct.11, 2002) (appointing co-lead plaintiffs to represent Securities Act claimants and Exchange Act claimants to "better represent the class members' varying and perhaps conflicting interests"). Mintz has not made any showing that a conflict of interest exists within the class and there are not presently any section 11 claimants for Mintz to represent. There is thus no basis for appointing co-lead plaintiffs.[40]

### b. NJS

■ NJS contends that it should be lead plaintiff because it is the only institu-

tional investor seeking appointment, and thus is the plaintiff "most capable of adequately representing the interests of class members." See 15 U.S.C. § 78u-4(a)(3)(B)(i). "While the words 'most capable' seem to suggest that the district court will engage in a wide-ranging comparison to determine which plaintiff is best suited to represent the class, the statute defines the term much more narrowly: The 'most capable' plaintiff—and hence the lead plaintiff—is the one who has the greatest financial stake in the outcome of the case, so long as he meets the requirements of Rule 23." *Cavanaugh, supra,* 306 F.3d at 729. Although the PSLRA was enacted to encourage institutional investors to take a more active role in securities litigation, the Ninth Circuit has held that it does not "require[ ] the district court to select the plaintiff it believes is 'the most sophisticated investor available.' " *Id.* at 737. As a consequence, there is no *per se* rule requiring that an institutional investor be appointed lead plaintiff in lieu of an individual who has a larger stake in the litigation. See *id.* at 737, n. 20 ("If financial sophistication had been Congress' principal concern, it would not have made the plaintiff who *lost* the most money the presumptive lead plaintiff"); *Steiner v. Aurora Foods Inc.,* No. C 00–602, 2000 WL 33911305, *3 (N.D.Cal. June 5, 2000) (holding that "the PSLRA does not

complaint to substitute a new named plaintiff with standing to pursue a section 10(b) claim); see also *In re Global Crossing, Ltd. Securities Litigation,* 313 F.Supp.2d 189, 204 (S.D.N.Y. 2003) ("Lead Plaintiffs have a responsibility to *identify and include named plaintiffs who have* standing to represent the various potential subclasses of plaintiff who may be determined, at the class certification stage, to have distinct interests or claims. By naming additional plaintiffs who, as purchasers of different categories of securities, have standing to bring claims on behalf of the various potential subclasses of securities purchasers, the Lead Plaintiffs in this case have simply exercised that responsibility").

39. *Id.* at 3.

40. At the hearing, counsel for Mintz argued that the appointment of co-lead plaintiffs was particularly appropriate in this case because the section 11 claims present different issues and require different proof than the section 10(b) claims. Counsel suggested that, because section 11 does not require that plaintiffs prove scienter, class

members with section 11 may be able to move for summary judgment at an earlier stage than their section 10(b) counterparts. He also asserted that the relative strength of the two types of claims would be an issue in determining the proper allocation of any settlement proceeds. Both *Hevesi* and *National Golf Properties* involved lead plaintiffs that lacked standing to assert claims under section 11 of the Securities Act; the court in each case found that the PSLRA did not require that the lead plaintiff have standing to pursue the section 11 claim. See *Hevesi, supra,* 366 F.3d at 81–82; *In re National Golf Properties,* 2003 WL 23018761 at *1. Although it is possible that issues such as those counsel identified will arise during the course of this litigation, Kurtz, as lead plaintiff, and Schiffrin & Barroway, as lead counsel, will have a fiduciary duty to represent all class members, including section 11 claimants. At this stage of the litigation, there is no evidence that they will fail to fulfill their fiduciary duties to section 11 claimants. Accordingly, counsel's concerns are not sufficient, standing alone, to undermine Kurtz's showing of adequacy.

limit the presumption of most adequate plaintiff to institutional investors. Rather, the statute merely provides that the person or group of persons with the largest financial interest in the relief sought by the class is entitled to the presumption of most adequate plaintiff" (citations omitted)); *In re Telxon Corp. Securities Litigation,* 67 F.Supp.2d 803, 821 (N.D.Ohio 1999) ("The institutional investor is not presumptively the most adequate plaintiff solely by virtue of its status as an institutional investor"). Further, a plaintiff that seeks to rebut the showing made by a presumptive lead plaintiff must adduce evidence that the presumptively most adequate plaintiff does not satisfy the requirements of Rule 23. *Cavanaugh, supra,* 306 F.3d at 729, n. 2.

 NJS argues that, as an institutional investor, it is a more adequate plaintiff than Kurtz because it is an experienced fiduciary and has more resources to oversee the litigation.[41] The court cannot engage in the sort of comparative analysis suggested by NJS. "So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job." *Cavanaugh, supra,* 306 F.3d at 732; see also *id.* at 739 (holding that the Reform Act was not meant to "authorize the district court to select as lead plaintiff 'the most sophisticated investor available'"); *Ferrari v. Gisch,* 225 F.R.D. 599, 610 (C.D.Cal.2004) ("Although the court may compare putative lead plaintiffs when assessing financial stake, once the statutory presumption has attached, it cannot be rebutted through relative comparison").

 NJS next argues that Kurtz has not demonstrated that he possesses the qualifications necessary to satisfy Rule 23's requirements.[42] Specifically, it asserts that, as a retired engineer, Kurtz has no experience investing in securities, serving as a fiduciary, or monitoring and overseeing the efforts of counsel.[43] As a consequence, it contends, Kurtz will not be an adequate representative of the plaintiff class. Kurtz, however, has retained qualified and competent counsel, his interests are not antagonistic to those of absent class members, and there is no evidence that his action is collusive. *In re Dalkon Shield IUD Products Liability Litigation, supra,* 693 F.2d at 855.[44] Additionally, he has a sufficient stake in the outcome of the litigation to ensure vigorous advocacy (see *Riordan, supra,* 113 F.R.D. at 64), and has submitted a declaration stating that he is willing and able to accept the obligations associated with being the lead plaintiff.[45]

NJS, moreover, has offered no evidence supporting its argument that Kurtz is an inadequate lead plaintiff. See *Cavanaugh, supra,* 306 F.3d at 730 ("At the third stage, the process turns adversarial and other plaintiffs may present evidence that disputes the lead plaintiff's prima facie showing of typicality and adequacy"). NJS cites *Borenstein v. Finova Group, Inc.,* No. CIV 00–619–PHX–SMM, 2000 U.S. Dist. LEXIS 14732, *28–29 (D.Ariz. Aug. 30, 2000), to support its assertion that "[c]ourts have routinely appointed institutional investors lead plaintiff over individual investors with larger

---

41. Consolidated Opposition of NJS Advisors, Inc. To The Competing Motions For Lead Plaintiff ("NJS Opp.") at 3.

42. *Id.* at 4.

43. NJS Opp. at 4.

44. At the hearing, NJS' counsel suggested that Kurtz's choice of lead counsel cast doubt on his adequacy to serve as lead plaintiff, noting that Schiffrin & Barroway has, in several securities class actions, withdrawn as lead counsel at an advanced stage of the litigation. NJS' argument is unpersuasive. At this stage of the litigation, "the inquiry is not into the adequacy or fitness of counsel but into the adequacy of plaintiff, and the choice of counsel is only an indicator—and a

relatively weak one at that—of plaintiff's fitness." *Cavanaugh, supra,* 306 F.3d at 733. In assessing whether the choice of lead counsel casts doubt on the fitness of a presumptive lead plaintiff, the court determines "whether the presumptive lead plaintiff's choice of counsel is so irrational, or so tainted by self-dealing or conflict of interest, as to cast genuine and serious doubt on that plaintiff's willingness or ability to perform the functions of lead plaintiff." *Id.* NJS has presented no evidence concerning proposed lead counsel that casts serious doubt on Kurtz's willingness or ability to function as lead plaintiff.

45. Kurtz Decl., ¶ 7.

losses." [46] *Borenstein* was decided before the Ninth Circuit's decision in *Cavanaugh,* however, and is factually distinguishable from this case. In *Borenstein,* the court was not able to identify the plaintiff with the largest stake in the litigation, and appointed an institutional investor lead plaintiff because it concluded that the investor's claims were more representative of those of all class members than the competing individuals investors. *Id.* at \*28–29. Here, by contrast, there is no dispute that Kurtz has suffered the largest financial loss.[47]

In sum, NJS is not entitled, under the Reform Act and controlling Ninth Circuit precedent to be appointed lead plaintiff simply because it is the most sophisticated investor or because it has the most investment or litigation experience. Rather, the statute presumes that the plaintiff with the largest financial stake in the litigation who satisfies the Rule 23 requirements will be the lead plaintiff. Accordingly, the court concludes that NJS has failed to rebut the presumption in favor of Kurtz's appointment.

■■■ NJS proposes alternatively that the court appoint it to serve as co-lead plaintiff with Kurtz.[48] NJS cites several cases in which courts have appointed an institutional investor as co-lead plaintiff with an individual investor who has suffered greater losses. In *Yousefi v. Lockheed Martin Corp.,* 70 F.Supp.2d 1061 (C.D.Cal.1999), the court denied a motion by 137 class members to be appointed co-lead plaintiffs, and *sua sponte* certified two of the movants to serve in this role. The court found that "none of the class members moving to serve as lead plaintiff possess[ed] enough of a financial stake to ensure careful and prolonged monitoring of this suit," and that the two plaintiffs selected could "each exert more control over their attorneys by serving as one of two lead plaintiffs, [rather than] ... as one of 137 lead plaintiffs." *Id.* at 1071.

In *In re Oxford Health Plans, Inc. Securities Litigation,* 182 F.R.D. 42 (S.D.N.Y.1998), the court appointed three competing movants co-lead plaintiffs, finding "[i]n light of the magnitude of th[e] case," that such a structure would ensure "broad representation and the sharing of resources and experience to ensure that the litigation w[ould] proceed expeditiously." *Id.* at 49. In *In re Cable & Wireless, PLC Securities Litigation,* 217 F.R.D. 372 (E.D.Va.2003), "the Court exercise[d] its discretion to appoint an institutional co-lead plaintiff" given its determination that "standing alone, [the individual investor was] not particularly an ideal lead plaintiff." *Id.* at 376. In *Laborers Local 1298 Pension Fund v. Campbell Soup Co.,* No. 00–152(JEI), 2000 WL 486956 (D.N.J. April 24, 2000), the court appointed two individual plaintiffs and an institutional investor as co-lead plaintiffs "since each may bring a unique perspective to the litigation"; it reserved the right, however, to alter this structure if the progress of the litigation was delayed. *Id.* at \*3. Additionally, several courts have approved appointment of unrelated groups of co-lead plaintiffs in cases where several investors have joined together to seek appointment. See, e.g., *In re Universal Access, Inc.,* 209 F.R.D. 379, 385 (E.D.Tex.2002); *In re First Union Corp. Securities Litigation,* 157 F.Supp.2d 638, 643 (W.D.N.C.2000).

Other courts, by contrast, have rejected requests to appoint unrelated investors as co-lead plaintiffs, finding the arrangement unnecessary and/or unwieldy. See *Gluck v. CellStar Corp.,* 976 F.Supp. 542, 549 (N.D.Tex.1997) (finding that the appointment of two unrelated movants would "inevitably delegate more control and responsibility to the lawyers for the class and make the class representatives more reliant on the lawyers[,] ... reduce the influence and responsibility of [the lead plaintiff], something Congress clearly did not wish the Court to do[, and] ... unnecessarily increase the time and expense spent on preparing and litigating the case, especially if the co-Lead Plaintiffs decided to hire co-Lead Counsel"); ; *In re Cree, Inc. Securities Litigation,* 219 F.R.D. 369, 372 (M.D.N.C.2003) ("Plaintiffs have not identified, nor has the court determined, any reason why co-lead plaintiffs would be helpful

**46.** *Id.*

**47.** *Id.* at 1.

**48.** NJS Opp. at 5.

or appropriate or why the presumptive lead plaintiff alone should not be appointed. A single lead plaintiff could reduce expenses and facilitate the control and prosecution of this litigation"); *Roth v. Knight Trading Group, Inc.*, 228 F.Supp.2d 524, 531 (D.N.J. 2002) ("There is no conflict of interest that prevents PAM from representing Hassenger's interest. The reasons advanced by PAM and Hassenger to proceed together as Lead Plaintiff are not compelling. There need be only one cook for this broth. The Court concludes that PAM alone can and will fairly and adequately represent the Class"); *In re Critical Path, Inc. Securities Litigation*, 156 F.Supp.2d 1102, 1112 (N.D.Cal.2001) (electing not to appoint a co-lead plaintiff so as "not to dilute the fiduciary responsibility of the lead plaintiff").

Many of the cases appointing co-lead plaintiffs predate *Cavanaugh*, or are from jurisdictions outside the Ninth Circuit. The rationales they offer for the appointment of co-lead plaintiffs, moreover, appear to be fundamentally at odds with *Cavanaugh's* interpretation of the PSLRA and its outlining of the process to be used in identifying a lead plaintiff. Additionally, NJS has not shown that the appointment of co-lead plaintiffs is preferable to the appointment of a single lead plaintiff in this case. Rather, the court concludes, a co-lead plaintiff structure is unnecessary, and might harm the class by dividing responsibility for the supervision of class counsel. Accordingly, NJS's request to be appointed co-lead plaintiff is denied.

### c. Conclusion Regarding Lead Plaintiff

Because no plaintiff has sufficiently rebutted the presumption that Kurtz should be lead plaintiff, the court appoints Kurtz—the plaintiff with the largest financial stake in the litigation—as lead plaintiff in this class action suit.

### D. Appointment Of Lead Counsel

The Reform Act directs that once the court has designated a lead plaintiff, that plaintiff "shall, subject to the approval of the court,

select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3)(B)(v). A court may disturb the lead plaintiff's choice of counsel only if it appears necessary to "protect the interests of the class." 15 U.S.C. § 78u–(a)(3)(B)(iii)(II)(aa). Kurtz states that he wishes to retain Schiffrin & Barroway, LLP as lead counsel. He also requests that Lim Ruger & Kim, LLP be appointed to serve as liaison counsel to the class.

▇▇▇ The court has reviewed Schiffrin & Barroway's résumé and is satisfied that it is capable of serving competently in the role of lead counsel. As noted earlier, the firm has experience litigating securities fraud class actions on behalf of individual investors. Its briefing to date indicates a familiarity with the applicable law. Accordingly, this aspect of Kurtz's request is granted. The court also finds that Lim, Ruger & Kim is qualified to play the role of liaison counsel. Lim, Ruger & Kim is located in Los Angeles, California, where the litigation is pending, and has expertise, *inter alia*, in complex civil and commercial litigation and securities matters.[49]

The court approves the appointment of liaison counsel on the understanding that its role will be limited to procedural advice and services related to litigating in this district. See *Bell v. Ascendant Solutions, Inc.*, No. Civ.A. 3:01–CV–0166, 2002 WL 638571, *7 (N.D.Tex. Apr.17, 2002) ("Should Lead Plaintiff select … a firm that is based outside of the Northern District of Texas (and does not have a local office capable of handling the work), the Court hereby appoints Claxton & Hill, P.L.L.C., local counsel in this case. The Court expects that the firm will advise lead counsel on local procedural matters, create and maintain a master list of all parties and their respective counsel, distribute communications between the Court and counsel, apprise counsel of developments and scheduling matters in the case, and generally assist in the coordination of the case. On these conditions, the Court approves the appointment of Claxton & Hill as liaison counsel … with the further proviso that Claxton & Hill's role be limited to the procedural advice and services specified above. Compensation will be

---

**49.** Yang Decl., Ex. E.

awarded according to only those duties listed above, strictly construed. The Court will not permit both Claxton & Hill and the lead counsel to be compensated for any duplication of services among the law firms"); see also *de la Fuente v. DCI Telecomms., Inc.,* 269 F.Supp.2d 229, 232–33 (S.D.N.Y.2003) ("This court has demonstrated a strong preference for local liaison counsel when securities fraud class actions are filed by out-of-state lawyers. It facilitates communication and ensures that out-of-state lawyers are familiarized with local rules and practices. It also ensures that if a court appearance is necessary on short notice or for a minor matter, a legal representative of the litigant can be available quickly, and without the expense of out-of-state travel"); but see *In re Nice Systems Securities Litigation,* 188 F.R.D. 206, 224 (D.N.J.1999) ("As stated, Proposed Lead Plaintiffs also seek approval of Cohn Lifland to serve as liaison counsel, but do not set forth the role Cohn Lifland will play if approved to serve in that capacity.... Proposed Lead Plaintiffs have not offered any explanation as to what duties would be assumed by Cohn Lifland and why such duties could not be adequately performed by lead counsel. Further, it has not been demonstrated how the duties of the liaison counsel would not be coextensive with those of the lead counsel"). *In re Cendant Corp. Litigation,* 182 F.R.D. 144, 152 (D.N.J. 1998) ("The chief applicant for appointment as liaison counsel asserted that he would play an integral role in this action, advising lead counsel on local procedural matters, coordinating administrative matters, distributing communications between the Court and other counsel, convening meetings of counsel and advising parties of developments in the case. Qualified lead counsel will be surely capable of performing these ministerial tasks.... Accordingly, all motions for appointment of liaison counsel are denied"). The court will monitor litigation activity, and scrutinize any fee requests ultimately submitted to ensure that they conform to these restrictions and are reasonable.[50]

### E. Motions To Consolidate And Request For Preservation Of Documents

Prior to stipulating to consolidate the related actions that had been filed against Autobytel, Kurtz, NJS, the Brea Plaintiffs Group, and Michael Brinda each filed motions seeking consolidation. Because the court has already entered an order consolidating the actions, the motions to consolidate are denied as moot.

NJS's motion to consolidate includes a request that the court order the preservation of documents related to this litigation in accordance with 15 U.S.C. § 78u–4(b)(3)(C)(i). The only basis NJS offers for the entry of such an order is its statement that, "[i]n complex securities fraud cases involving companies with numerous employees, such an order is appropriate and will prevent the loss of key documents, whether through inadvertence or otherwise."[51]

The Reform Act provides, in relevant part, that

> "[d]uring the pendency of any stay of discovery pursuant to this paragraph, unless otherwise ordered by the court, any party to the action with actual notice of the allegations contained in the complaint shall treat all documents, data compilations (including electronically recorded or stored data), and tangible objects that are in the custody or control of such person and that are relevant to the allegations, as if they were the subject of a continuing request for production of documents from an opposing party under the Federal Rules of Civil Procedure." 15 U.S.C. § 78u–4(b)(3)(C)(i).

The statute also provides that the court may sanction a party that "willful[ly] fail[s]" to comply with the duty to preserve relevant evidence. 15 U.S.C. § 78u–4(b)(3)(C)(ii).

Notwithstanding this statutory mandate that all parties preserve evidence, NJS asks

---

**50.** The Reform Act expressly limits attorneys' fees to "a reasonable percentage of the amount of damages and prejudgment interest actually paid to the class." See 15 U.S.C. § 78u–4(a)(6).

**51.** Memorandum Of Law In Support Of NJS Advisors' Motion To Consolidate Related Actions ("NJS Consolidation Mem.") at 3.

that the court order defendants to preserve documents. Defendants counter that the request is superfluous given the statutory requirement.[52] They represent that they "have fully complied with their statutorily-prescribed evidence preservation obligations," and note that "Autobytel has preserved relevant evidence, as well as distributing notices regarding the existence of the securities lawsuits and the obligation to preserve evidence, whether in hard copy or electronic format." [53]

 Because the Reform Act specifically obligates defendants to preserve evidence, defendants represent that they have complied and will comply with the statutory requirement, and NJS has adduced no evidence of non-compliance, the court declines to enter an order mandating the preservation of evidence. See *In re Grand Casinos, Inc. Securities Litigation*, 988 F.Supp. 1270, 1273 (D.Minn.1997) (declining to order the preservation of evidence because, *inter alia*, "the preservation of evidence in the possession of the parties is statutorily automatic"); see also *Schnall v. Annuity and Life RE (Holdings), Ltd.*, Nos. 302CV2133(GLG), 303CV1826(GLG), 2004 WL 51117, *2 (D.Conn. Jan.2, 2004) (denying a motion for a preservation order because defendants "have actual notice of the allegations against them [and] in their responses to plaintiffs' motion ... have affirmatively stated that they are fully aware of their obligations under the PSLRA and the sanctions for failure to comply"); *In re Tyco International, Ltd. Securities Litigation*, No. 00MD1335, 2000 WL 33654141, *2 (D.N.H. Jul.27, 2000) (denying plaintiffs' request for a preservation order "because such an order would either unnecessarily duplicate or improperly alter the obligations created under the [Reform Act]," and noting that "[a]bsent a showing that defendants are not acting in accordance with their statutory duty, the [Reform Act's] preservation provision should be sufficient to ensure the preservation of relevant evidence in the defendants' custody or control").

---

**52.** Defendants' Response To Plaintiffs' Motions For Consolidation, Appointment Of Lead Plaintiff and Lead Counsel ("Defs.' Response") at 3–4.

## III. CONCLUSION

For the foregoing reasons, the court grants Gary Kurtz's motion for appointment as lead plaintiff and approves his selection of Schiffrin & Barroway, LLP as lead counsel and Lim, Ruger & Kim, LLP as liaison counsel. The court denies the motions of Alex Mintz, Brea Plaintiffs Group, and NJS for appointment as lead plaintiff and for approval of their selection of lead counsel. Lead plaintiff is directed to file a consolidated class action complaint on or before **April 25, 2005.** Defendants are directed to file a responsive pleading on or before June 6, 2005. In the event defendants file a motion to dismiss, plaintiffs' opposition must be filed on or before **July 5, 2005.** Any reply must be filed on or before **July 18, 2005.** The motion should be calendared for hearing on **August 29, 2005 at 10:00 a.m.**